UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERESA KAY JENKINS,                    :
                                       :CIVIL ACTION NO. 3:17-CV-0211
            Plaintiff,                 :
                                       :(JUDGE CONABOY)
            v.                         :
                                       :
NANCY A. BERRYHILL,                    :
Acting Commissioner of                 :
Social Security,                       :
                                       :
            Defendant.                 :
                                       :

_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Supplemental Security Income ("SSI") under Title XVI. (Doc. 1.) Plaintiff filed her application for benefits on November 11, 2013, alleging a disability onset date of January 1, 2008. (R. 17.) After she appealed the initial denial of the claim, a hearing was held on May 14, 2015, and Administrative Law Judge ("ALJ") Randy Riley issued his Decision on June 11, 2015, concluding that Plaintiff had not been under a disability from November 11, 2013, to the date of the decision. (R. 24.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on December 2, 2016. (R. 1-6, 12-13.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on February 3, 2017. (Doc. 1.) She asserts in her supporting brief that the Acting Commissioner's determination should be remanded for the following reasons: 1) the

step two determination was not supported by substantial evidence; and 2) the residual functional capacity ("RFC") determination was not supported by substantial evidnece. (Doc. 16 at 1.) After careful review of the record and the parties' filings, the Court concludes this appeal is properly denied.

## I. Background

Plaintiff was born on February 7, 1970, and was forty-three years old on the alleged disability onset date. (R. 23.) She has a tenth-grade education and no past relevant work. (*Id.*)

### A. *Medical Evidence*

Plaintiff received primary care at Biglerville Family Medicine. (R. 181-249.) In January 2013 CRNP Danielle Gourley saw Plaintiff for the chief complaints of bilateral lower leg pain, and constant fatigue with headaches. (R. 214.) Plaintiff did not have a physical examination "due to the nature of the visit," and she was assessed to have hypertension, type 2 diabetes mellitus and depression with anxiety. (R. 214, 216.)

In February 2013, Ms. Gourley saw Plaintiff for a routine follow-up of multiple chronic illnesses including coronary artery disease, hypertension, type 2 diabetes mellitus, and depression with anxiety. (R. 204.) Plaintiff reported that she felt her depression was controlled and she was tolerating her medications without side effects, she denied specific problems related to diabetes, hypertension, hyperlipidemia, and coronary artery

2

disease. (R. 205-06.) Physical examination showed that Plaintiff had age appropriate range of motion and strength, normal vascular examination, and neurological examination indicated normal judgment, orientation and mentation, and deep tendon reflexes were normal and symmetric. (R. 208.)

In April 2013, Plaintiff saw Ms. Gourley with complaints of bilateral leg swelling, particularly after she was on her feet a lot. (R. 200.) Plaintiff also complained of hand pain which Ms. Gourley suspected could be related to cervicalgia in that Plaintiff had "a history of discs in her neck." (*Id.*) Musculoskeletal examination showed left foot tenderness near the great toe, peripheral vascular pulses were normal, and neurological exam was normal. (R. 203.) Office notes indicate Plaintiff said she felt strongly that her glucose was under control and she did not need insulin. (R. 200.) Plaintiff was to have follow-up labs in May and get an x-ray of the left foot. (*Id.*)

On May 22, 2013, Plaintiff presented to the Emergency Department at Gettysburg Hospital for evaluation of elevated blood sugar levels. (R. 265.) Her only complaints were nausea, generalized malaise, and fatigue. (*Id.*) Other than weakness, fatigue, and back pain, the Review of Systems was negative. (*Id.*) Plaintiff's recorded medical history included coronary artery disease, hypertension, and diabetes. (R. 266.) No specific problems other than low temperature (98.2 degrees) were noted on

Physical examination.  (R. 266-67.)  Notes indicate that Plaintiff presented with generalized malaise and some fatigue with hyperglycemia, her blood sugar improved with fluids and insulin, she had a prescription from her primary care provider for a new oral hypoglycemic drug, and she would follow up outpatient.  (R. 269.)

On May 24, 2013, Plaintiff had a follow-up visit with Ms. Gourley at Biglerville Family Medicine, particularly to check up on her diabetes.  (R. 196.)  Plaintiff said she did not want to restart metformin despite that fact that she knew her glucoses were going up but she agreed to start a long-acting insulin (Levemir). (R. 195.)  Ms. Gourley commented she suspected Plaintiff's nausea was stress related.  (*Id.*)  Plaintiff reported that she felt her depression was controlled and she was tolerating the medications without side effects.  (R. 196.)  Physical exam showed no problems and Plaintiff was assessed to have age appropriate range of motion and strength, normal judgment, mentation and orientation, and normal and symmetric deep tendon reflexes.  (R. 199.)  Both feet were determined to be normal and a monofilament wire test was normal.  (*Id.*)  Later in May the Levamir dosage was increased due to her diabetes not being at goal.  (R. 191.)

At a routine check up in August 2013, Plaintiff reported heart palpitation and sweating but denied other problems related to hypertension; she felt her depression was controlled; and she said

was taking her diabetes medication as prescribed and denied episodes of feeling excessively weak/shaky/sweaty but reported low blood sugars. (R. 186-87.) Musculoskeletal and neurological examination findings were the same as noted at previous visits. (R. 190.) Foot examination and monofilament tests were also normal. (*Id.*)

On November 5, 2013, Plaintiff reported to Ms. Gourley that her legs were getting worse with pain that started in her upper thighs and went all the way to her feet and nothing helped it. (R. 181.) Plaintiff also reported that she was tired of her legs hurting, tired of waking up crying, she could not stand for any length of time, and she could only sit for twenty minutes at a time. (*Id.*) Lumbar spine MRI was ordered, it was noted that Plaintiff needed counseling and should be given related information, and effexor and xanax dosages were increased. (*Id.*) Physical exam showed that Plaintiff was in mild distress, forward flexion and extension were decreased but she had no tenderness. (R. 183.)

On November 29, 2013, Plaintiff had MRI of the lumbar spine. (R. 243-44, 261-62.) The following impression was recorded: 1) multilevel disc bulges; disc protrusions at L4-5 and L5-S1; 3) discogenic disease pronounced at L5-S1; 4) multilevel spondyloarthropathy; 5) artifact or right neural low signal focus at L5 ("can be further evaluated with followup enhanced study");

and 6) small right renal cyst.  (R. 243, 261.)

Plaintiff again saw Ms. Gourley on December 16, 2013, for follow-up of her leg pain.  (R. 217.)  Office notes indicated that neuropathy was suspected and a bulging disc may have been contributing to the problem--Plaintiff had been seen by podiatry and a neurosurgery referral was arranged.  (*Id.*)  Notes also indicate that Plaintiff was not self-monitoring blood glucose levels due to cost but she was urged to do so to be certain her levels were ok.  (*Id.*)  Plaintiff reported that she "always" had foot pain and leg pain bilaterally.  (R. 220.)  Physical exam showed foot with decreased sensation, palpable pulses, feet were cool (not cold), and pain was reproducable with pressure on the arches.  (*Id.*)

Plaintiff had a neurosurgical consultation with Troy J. Hamilton, PA-C, at Wellspan Neurosurgery on January 16, 2014.  (R. 252.)  Physical exam showed moderate tenderness to palpation throughout the paravertebral musculature of the lumbar spine, strength and deep tendon reflexes grossly preserved through the lower extremities, and negative straight leg raise bilaterally. (R. 256.)  Mr. Hamilton assessed disc degeneration, lumbar canal stenosis, and lumbar radiculopathy.  (*Id.*)  He reported that Plaintiff's discomfort was likely the result of the stenosis at L4-5, and he recommended consideration for epidural steroid injections.  (*Id.*)  He noted that he would make the referral to

pain management and Plaintiff should have a followup for surgical consultation if the steroid injections were ineffective. (*Id.*)

On January 19, 2014, Plaintiff was seen at the Emergency Department of Gettysburg Hospital for sudden onset of severe back pain in the lumbar region which was worse than her chronic back pain. (R. 257.) The "Impression" was sciatica and Plaintiff was given pain medication, a Medrol dose pack, and instructions to follow up with her regular doctor within a day or two.[1] (R. 260.)

On January 30, 2014, Mark Christopher, M.D., (identified as a specialist in pathology (R. 282)) conducted an internal medicine examination of Plaintiff on the referral of the Bureau of Disability Determination. (R. 279-82.) He recorded that her chief complaint was low back pain with shooting pain down her legs which had progressed over the preceding two years which she rated at a level of eight or nine out of ten. (R. 279.) Plaintiff also reported that she could not walk because of severe pain, she could not sit or stand for long periods of time, the pain induced nausea at times, and it was relieved by laying down and taking pressure off her lower back. (*Id.*) Plaintiff reported symptoms related to her heart problems (legs swell after standing for a long period of time and shortness of breath) and her diabetes (feet extremely

---

[1] No records indicate that Plaintiff was seen at Summit Pain Medicine where she was referred for pain management referral (R. 301-08) or that she otherwise received the recommended steroid injections.

painful and associated numbness).  (*Id.*)  Physical examination
showed that Plaintiff was in apparent pain, her gait was extremely
guarded and she was tilted forward, she declined to walk on heels
and toes, her squat was 25%, her stance was guarded, she used no
assistive device and needed no help changing for exam or getting on
and off exam table, and she was able to rise from a chair without
difficulty.  (*Id.*)  Musculoskeletal examination showed leg raise
positive bilaterally to five degrees, joints stable and nontender,
and no redness, heat, swelling or effusion.  (R. 281.)  Neurologic
examination showed deep tendon reflexes physiologic and equal in
upper and lower extremities, no sensory deficit noted, and strength
4/5 in the lower extremities and 5/5 in upper extremities.  (*Id.*)
Examination of the extremities showed no muscle atrophy.  (*Id.*)
The Mental Status Screen showed no evidence of impaired judgment or
significant memory impairment and normal affect.  (R. 281-82.)

Medical Records from Biglerville Family Medicine indicate that
Plaintiff was seen on March 11, 2014, when she complained of
tingling in her feet.  (R. 299.)  No examination or medical
findings are contained in the record of the visit.  (*See id.*)

A Discharge Summary from Gettysburg Hospital Emergency
Department dated May 13, 2015, indicates that Plaintiff was seen
for the chief complaint of back pain, she was given pain medication
and information about back care and sacroiliitis and she was to
follow up with her primary care provider within one to two weeks.

(R. 306-07.)

## B.    *Opinion Evidence*

Dr. Christopher completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) on January 30, 2014.  (R. 283-88.)  He opined that Plaintiff could lift and carry up to ten pounds occasionally and never more than that due to back pain; she could sit for one hour at a time and for a total of two hours in an eight-hour work day due to back pain; she could use her hands and feet frequently; and she could never climb, balance, stoop, kneel, crouch, or crawl due to back pain.  (R. 283-86.)  Dr. Christopher also opined that Plaintiff had numerous environmental limitations due to her back pain--of all listed, the only thing she was able to do was drive a motor vehicle occasionally.  (R. 287.) He further concluded that Plaintiff was not able to walk a block at a reasonable pace on an uneven surface or climb a few steps at a reasonable pace with the use of a single hand rail but she was able to perform activities like shopping, travel alone, use standard public transportation, prepare a simple meal and feed herself, care for her personal hygiene and sort, handle and use paper files.  (R. 288.)

On February 6, 2014, Jonathan Rightmyer, Ph.D., a State agency psychological consultant, concluded that Plaintiff's mental impairment was nonsevere.  (R. 53.)

9

## C. Hearing Testimony

At the May 14, 2015, hearing before ALJ Riley, Plaintiff testified that she lived in a house with her brother and her twelve-year-old son, she completed tenth grade, she had no vocational training, and her brother supported her. (R. 32-33.) Plaintiff said she showered with a girlfriend present in case she fell, she cooked while sitting at the stove, she did the dishes while sitting at the sink, she did very little housework, and she did not do laundry, yard work, or shopping. (R. 33-34.) Plaintiff estimated that she could stand in one position for ten to fifteen minutes. (R. 36.)

Plaintiff testified that she took her medications as prescribed but they did not help and she has side effects from them. (*Id.*) She said her diabetes was not controlled and when her sugar was high, she got bad headaches and blurry vision, and she wanted to go to sleep. (R. 39.) Plaintiff added that the burning and tingling in her feet continued. (R. 40.)

Plaintiff reported she had pain in her back every day and there was nothing she could do to make it better. (R. 41.) She said the pain fluctuated––on good days she could do a little more than normal and on bad days she stayed in bed all day. (R. 43-44.) She also said that she had recently been seen at Gettysburg Hospital because she sprained her back after her legs gave out. (R. 42.)

ALJ Riley asked the vocational expert ("VE") about Plaintiff's past work and the VE responded that the only employment noted in the record was that of a fast food worker. (R. 46-47.) The ALJ then asked the VE to consider a hypothetical person of Plaintiff's age, education, and work experience who could do the following: "Sedentary work, then out of an eight-hour day at one time could sit two hours at a time. Can stand one hour at a time, can walk one hour at a time, never any foot control operations or ladders. Occasional stairs, balance, stoop, kneel, crouch, crawl and no commercial driving." (R. 47.)

The VE responded that the individual could not do Plaintiff's past work but there were jobs available for the individual such as final assembler, inspector, and table worker. (R. 48.) If the individual could not engage in sustained work activity on a regular continuous basis for eight hours a day, five days a week for a 40-hour week, the VE testified there were no jobs available. (*Id.*)

## D. ALJ Decision

In his June 11, 2015, Decision, ALJ Riley concluded Plaintiff had the severe impairments of degenerative disc disease, diabetes mellitus, and obesity. (R. 19.) He also concluded that Plaintiff's depression was nonsevere. (R. 20.) He noted that, although the record established evidence of depression, reported it was controlled with medication, she did not receive mental health treatment by a therapist, psychologist, or psychiatrist, and had

not required psychiatric admission.  (R. 19-20.)

After concluding that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing, the ALJ assessed that Plaintiff had

> the residual function capacity to perform
> sedentary work . . . . except she is limited to
> sitting two hours at a time, walking one hour
> at a time and standing one hour at a
> time. The claimant needs to avoid foot control
> operations and climbing ladders, cannot
> perform commercial driving and can perform
> occasional climbing stairs, balancing,
> stooping, kneeling, crouching and crawling.

(R. 20.)

Ultimately, the ALJ determined Plaintiff was not disabled at step five when he concluded that there were jobs that existed in the national economy that she could perform.  (R. 23.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]  It is necessary for the

---

[2]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such

12

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; and 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner

> work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 23-24.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel*
> *non* of substantial evidence is *not* merely a
> quantitative exercise. A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence. Nor is evidence substantial if it
> is overwhelmed by other evidence--

> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion. *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted). The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an

exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's determination should be remanded for the following reasons: 1) the step two determination was not supported by substantial evidence; and 2) the residual functional capacity ("RFC") determination was not

16

supported by substantial evidence.  (Doc. 16 at 1.)

## A.   *Step Two Error*

Plaintiff asserts that the ALJ erred at step two when he determined that Plaintiff's depression was not a severe impairment and he failed to follow the relevant regulation for assessing the severity of her impairment.  (Doc. 16 at 6-9.)  Plaintiff also maintains the error affected the ALJ's subsequent steps in the sequential evaluation process including in determining Plaintiff's RFC and credibility.  (Doc. 16 at 9.)  Defendant maintains that the ALJ did not err at step two, and, if he did, Plaintiff has not shown that the claimed step two errors are harmful.  (Doc. 21 at 6-12.)  The Court concludes Plaintiff has not shown the claimed errors are cause for reversal or remand.

If the sequential evaluation process continues beyond step two, a finding of "nonsevere" regarding a specific impairment at step two may be deemed harmless if the functional limitations associated with the impairment are accounted for in the RFC. *Salles v. Commissioner of Social Security*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (not precedential) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).  In other words, because the outcome of a case depends on the demonstration of functional limitations rather than a diagnosis, where an ALJ identifies at least one severe impairment and ultimately properly characterizes a claimant's symptoms and functional limitations, the

17

failure to identify a condition as severe is deemed harmless error. *Garcia v. Commissioner of Social Security*, 587 F. App'x 367, 370 (9th Cir. 2014) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)); *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential) ("Mere presence of a disease or impairment is not enough[;] a claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity.*"); Burnside v. Colvin*, Civ. A. No. 3:13-CV-2554, 2015 WL 268791, at *13 (M.D. Pa. Jan. 21, 2015); *Lambert v. Astrue*, Civ. A. No. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009).

Here Plaintiff merely states conclusorily that the ALJ's finding that her depression was nonsevere affected his findings at subsequent steps. (Doc. 16 at 9.) She does not point to any specific limitation attributable to her depression that would have affected the RFC or credibility determinations. Although Defendant aptly pointed out flaws in Plaintiff's step two argument (*see* Doc. 21 at 8-9), Plaintiff chose not to file a reply brief, informing the Court that she "relies on and reasserts arguments made" in her opening brief (Doc. 22 at 1). Thus, Plaintiff has not shown error on the basis of a harmful effect of the finding of depression being nonsevere at step two based on the effect at later steps in the sequential evaluation process.

Similarly, Plaintiff does not respond to Defendant's sound

argument that Plaintiff has not shown error regarding the handling of the psychiatric review technique ("PSR") in this case in that Dr. Rightmeyer conducted the PSR and ALJ Riley granted significant weight to Dr. Rightmeyer's opinion. (*See* Doc. 21 at 10-12.) Significantly, Plaintiff does not point to any harm related to the ALJ's failure to follow 20 C.F.R. § 416.920a in her two-sentence presentation of the issue. (Doc. 16 at 8-9.) Because Plaintiff has not satisfied her burden of showing harmful error on the basis alleged, the Court does not find that the ALJ's asserted failure to follow the technique set out in 20 C.F.R. § 416.920a *per se* warrants remand.

## B.    *Residual Functional Capacity Assessment*

Plaintiff asserts that the RFC assessment is error for two reasons: the ALJ did not properly consider the opinion evidence of record; and the ALJ failed to fully and fairly develop the record. (Doc. 16 at 11.) Defendant responds the ALJ properly evaluated the opinion evidence and satisfied his duty to develop the record. (Doc. 21 at 12-25.) The Court concludes Plaintiff has not met her burden of showing that remand is required on the bases alleged.

## 1.    **Opinion Evidence**

Plaintiff contends ALJ Riley erred by affording only partial weight to Dr. Christopher's opinion. (Doc. 16 at 9-11.) Defendant responds that the ALJ evaluated the opinion in accordance with relevant regulations and he reasonably declined to adopt it. (Doc.

21 at 16-20.)

Plaintiff relies on *Morales v. Apfel* for the proposition that "[t]he ALJ cannot take 'pieces of the examination reports that support [his] determination.'" (Doc. 16 at 9-10 (quoting *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000)).) Based on *Morales*, she also posits that an ALJ cannot ignore ultimate conclusions and medical symptomatology in reports that lend support to the opinion at issue and choose instead to draw his own medical conclusion. (Doc. 16 at 11 (citing *Morales*, 225 F.3d at 318).) Plaintiff states that Dr. Christopher was "the only qualified medical professional to examine Plaintiff," and he characterizes Dr. Christopher's opinion as "the only valid examining opinion of record." (Doc. 16 at 11.)

*Morales* is immediately distinguishable because it considered the opinion of a treating medical source which was supported by two other opinions from treating medical sources. 225 F.3d at 317-18. Here, the opinion at issue is that of an examining source which is entitled to less weight than that of a treating source. *See* 20 C.F.R. § 404.1527(c)(2).

Plaintiff is correct that "Dr. Christopher was the only medical professional to examine Plaintiff" (Doc. 21 at 17), but this is true because Plaintiff received primary care and regular physical examinations from a certified registered nurse practitioner ("CRNP"), Danielle Gourley, at Biglerville Family

Medicine and the neurosurgery consultation examination was conducted by a registered physician's assistant (PA-C), Troy J. Hamilton. (R. 181-249, 252-56.) For claims filed prior to March 27, 2017, CRNPs and PA-Cs were not "acceptable medical sources." *See* 20 C.F.R. § 404.1502. The importance of information from CRNPs and PA-Cs is indicated in the definitional change for claims filed on or after March 27, 2017, which includes these practitioners in the definition of an "acceptable medical source." *See* 20 C.F.R. § 404.1502(a). Importantly, at the relevant time Ms. Gourley and Mr. Hamilton were considered medical sources, and, as such, evidence related to their treatment and physical examinations are to be considered in evaluating the opinion of a medical source and in making the determination as to whether the individual is disabled. SSR 06-03p, 2006 WL 2329939, at *4. Earlier, SSR 06-03p highlighted the relevance of evidence from these practitioners in evaluating impairment severity and functional effects:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners[, and] physician assistants, have increasingly assumed a greater percentage of the treatment and evaluation of functions previously handled primarily by physicians and psychologists.

SSR 06-03p, 2006 WL 2329939, at *3.

In her brief, Plaintiff ignores the evidence cited by ALJ Riley in support of his RFC. Importantly, she does not dispute ALJ

Riley's finding that Dr. Christopher's opinion was "not supported by the longitudinal examination or medical findings" (R. 23), i.e., the findings of Plaintiff's treating practitioner at Biglerville Family Medicine. (*See* Doc. 16.) Rather, Plaintiff cites a November 2013 MRI and a January 2014 neurosurgery consultation as the medical evidence of record supporting Dr. Christopher's opinion. (Doc. 16 at 10.) ALJ Riley considered the MRI and the January 2014 consultation (R. 21-22) but he was under no obligation to consider them over the longitudinal record when determining the weight to be afforded Dr. Christopher's opinion.

The regulation setting out the methodology for evaluating medical opinions specifies that the supportability of an opinion is a key factor. 20 C.F.R. § 404.1527(c)(3). Here, Dr. Christopher supported his limitation findings simply with the notation "back pain." (R. 283-88.) Consistency is another identified factor--the more consistent a medical opinion is with the record as a whole, the more weight it should be given. 20 C.F.R. § 404.1527(c)(4). ALJ Riley considered this factor and specifically found the opinion was not consistent by longitudinal examinations or medical findings (R. 23), a conclusion Plaintiff does not dispute.

Unlike *Morales*, 255 F.3d at 318, here no other opinions support Dr. Christopher's opinion and the fact that *some* evidence supports it is not dispositive--even if a different factual conclusion could be reached, a court may not set aside a decision

based on substantial evidence, *Hartranft*, 181 F.3d at 360. Because Plaintiff has not shown that the ALJ's determination regarding Dr. Christopher's opinion is not supported by substantial evidence, she has not shown that the claimed error is cause for remand.[3]

## 2.   **Development of the Record**

Plaintiff contends ALJ Riley failed to fully and fairly develop the record because he did not order a psychiatric consultative examination and he failed to request a treating physician opinion. (Doc. 16 at 11.)  Defendant responds that the record was fully and fairly developed in that Plaintiff had the benefit of counsel throughout the agency proceedings and counsel agreed with the ALJ's indication that he would review all documentation and issue a decision. (Doc. 21 at 20.)  The Court concludes Plaintiff has not shown the claimed error is cause for remand.

---

[3]   Though not cited by ALJ Riley, this conclusion is bolstered by the fact that Plaintiff's visit with Dr. Christopher occurred eleven days after she was seen at the Emergency Department of Gettysburg Hospital for a sudden onset of severe back pain which was diagnosed as sciatica.  (R. 257-60.)  It does not appear that Plaintiff followed up with her family doctor as directed.  (R. 260.)  The evaluation also took place approximately two weeks after she was referred to pain management where steroid injections were recommended and the record does not indicate any follow-up. Further, despite the numerous complaints of severe problems related to her impairments lodged at her visit with Dr. Christopher (R. 279-83), Plaintiff complained only of tingling in her feet when she visited Biglerville Family Medicine about two weeks after her visit with Dr. Christopher, and the office records from the visit contain no examination or medical findings.  (R. 299.)

Although the duty to assist the claimant and develop the record is well established, *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), the duty is not unlimited and does not come into play where there was sufficient evidence in the record for the ALJ to make his decision, *see*, *e.g.*, *Moody v. Barnhart*, 114 F. App'x 495, 501 (3d Cir. 2004) (not precedential); *see also Griffin v. Commissioner of Social Security*, 303 F. App'x 886, 890 n.5 (3d Cir. 2009) (not precedential). It is the claimant's duty to prove that he is disabled, 20 C.F.R. § 404.1512, and the ALJ is entitled to assume that Plaintiff's counsel "is making his strongest case for benefits." *Glenn v. Sec'y of Health and Human Serv.*, 814 F.2d 387, 391 (7th Cir. 1987); *see also Batts v. Barnhart*, 2002 WL 32345745, at *8 (E.D. Pa. Mar. 29, 2002)).)

With her cursory argument that the general duty to develop the record required more in this case, Plaintiff has not addressed relevant caselaw and her duty to present evidence of disability. Therefore, Plaintiff has not shown that remand is required for further development of the record.

## V. Conclusion

For the reasons discussed above, the Court concludes Plaintiff's appeal is properly denied. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: September 11, 2017

24